# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ATLANTIC SPECIALTY INSURANCE COMPANY, :
                                      :
        Plaintiff,               :  CIVIL CASE NO.
                                      :
v.                                    :
                                      :
ANNA M. DLUGOSZ A/K/A ANA M. DLUGOSZ  :
AND KEVIN R. BURKE,                   :
                                      :
        Defendants.              :  NOVEMBER 23, 2020

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Atlantic Specialty Insurance Company ("ASIC") by and through its undersigned counsel brings this Declaratory Judgment Action against Defendant Anna M. Dlugosz a/k/a Ana M. Dlugosz ("Dlugosz") and Defendant Kevin R. Burke ("Burke") and alleges as follows:

## INTRODUCTION

1.      Pursuant to 28 U.S.C. § 2201 and  28 U.S.C. § 2202, ASIC brings this action against its putative insured, Dlugosz, and underlying claimant, Burke, seeking a judicial declaration that ASIC has no duty to defend and indemnify Dlugosz in the underlying lawsuit, *Anna Dlugosz v. Kevin R. Burke*, Case No. MMX-CV16-6015991-S, pending in the Connecticut Superior Court, Judicial District of Middlesex at Middletown ("Underlying Action"). ASIC, likewise, seeks a judicial declaration that ASIC is entitled to withdraw from defending Dlugosz in the Underlying Action.

2.      Burke is a nominal defendant to this matter and has been named as a defendant because he is the Counterclaim Plaintiff in the Underlying Action.  Burke is thus a potentially interested party in this matter, regarding insurance coverage for the damages and injuries at issue in the Underlying Action.

3.      The Underlying Action arises out of Burke's claim that Dlugosz entered Burke's private property located at 2425 Merwins Lane, Fairfield, Connecticut ("Burke Residence") and refused to leave (the "Incident").  On the date of the Incident, Dlugosz was employed by Vision Appraisal Technology Holdings, LLC ("Vision") and entered onto the Burke Residence to appraise the property.  Dlugosz sued Burke for intentional and negligent infliction of emotional distress arising from the Incident, and Burke filed a counterclaim against Dlugosz for slander per se and trespass to land. Burke recently amended his counterclaim to add claims against Dlugosz for common law and statutory vexatious litigation.

4.      ASIC initially defended Dlugosz in the Underlying Action under insurance policies that ASIC issued to Vision, Dlugosz' former employer, pursuant to a broad reservation of rights. Dlugosz is an insured under the policies ASIC issued to Vision but only for "acts within the course and scope of their [Dlugosz'] employment by you [Vision] or while performing duties related to the conduct of your [Vision's] business."

5.      The Court presiding over the Underlying Action recently granted Dlugosz' Motion for Summary Judgment, dismissing Burke's claim for slander per se.  The remaining allegations of trespass to land and statutory and common law vexatious litigation are not covered under the ASIC policies.

6.      ASIC seeks a judicial declaration that ASIC has no duty to defend Dlugosz and likewise, has no duty to indemnify Dlugosz in the Underlying Action pursuant to the terms, conditions and exclusions in the relevant ASIC policies.  Because ASIC no longer has a duty to defend Dlugosz, ASIC also seeks a declaration that ASIC is entitled to withdraw from the defense of Dlugosz in the Underlying Action.

## PARTIES, JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      ASIC is a corporation formed and existing under the laws of the State of New York with its principal place of business in Plymouth, Minnesota.

9.      Anna Dlugosz is an individual believed to reside at 185 Boston Road, Middletown, Connecticut (based on the summons filed in the lawsuit captioned Anna M. Dlugosz v. Kevin R. Burke, MMX-CV16-6015991-S) or at 86 Spring Street, New Britain, Connecticut (based on additional research performed to verify Dlugosz' whereabouts).

10.     Kevin R. Burke is an individual residing at 2425 Merwins Lane, Fairfield, Connecticut.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this District.

## THE UNDERLYING ACTION

12.     In the Third Amended Counterclaim (the "Counterclaim"), Burke alleges that on or about November 19, 2014, Dlugosz entered onto Burke's residence at 2425 Merwins Lane, Fairfield, Connecticut (the "Burke Residence").  Dlugosz allegedly peered through the windows and walked around the Burke Residence without Burke's permission.  A true and correct copy of the Third Amended Counterclaim is attached hereto as **Exhibit A**.

13.     On the date of the Incident, Dlugosz was employed by Vision and entered onto the Burke Residence to appraise the property.

14.     The Burke Residence is allegedly located in a remote, thickly wooded and isolated

area of Fairfield, Connecticut.  Burke alleges that at the time of the Incident his neighbors had recently been burglarized.

15.    Burke claims that he confronted Dlugosz as soon as he noticed that Dlugosz was peering in the window of the Burke Residence.  However, Dlugosz allegedly continued to walk around the Burke Residence after Burke instructed her to leave.

16.    Burke alleges that he was injured by his reasonable belief that he and his family members were in danger of criminal activity and seeks damages for trespass to land.

17.    Burke also alleges that after the Incident, on or about November 19, 2014, Dlugosz openly stated in the Fairfield Tax Assessor's office that Burke had pointed a gun at Dlugosz while she was assessing the Burke Residence.  The statement was allegedly defamatory and caused injury to Burke's reputation in the community.

18.    Burke further alleges that on or about July 25, 2016, Dlugosz maliciously and without probable cause filed suit against Burke for intentional and negligent infliction of emotional distress, giving rise to the basis for Burke's common law and statutory vexatious litigation counts in the Counterclaim.  Dlugosz was not an employee of Vision on July 25, 2016. Although Dlugosz has since voluntarily withdrawn her suit against Burke, the Counterclaim in the Underlying Action remains.

19.    Pursuant to the pending Counterclaim, Burke seeks monetary damages including compensatory, consequential and punitive damages, in addition to statutory damages, interest, attorney's fees and any other relief deemed to be fair and equitable by the Court presiding over the Underlying Action.

20.    On March 15, 2018, ASIC issued a coverage position letter in which ASIC agreed to defend Dlugosz under the Policy pursuant to its right to later disclaim coverage and withdraw

from Dlugosz' defense in the Underlying Action (the "Coverage Position Letter"), if it is determined that ASIC no longer has a duty to defend Dlugosz in the Underlying Action. A true and correct copy of ASIC's original Coverage Position Letter is attached hereto as **Exhibit B**.

21.     ASIC agreed to defend Dlugosz against the allegations in the prior version of Burke's counterclaim based on Burke's allegation that Dlugosz defamed Burke when she openly stated in the Fairfield Tax Assessor's office that Burke had pointed a gun at Dlugosz while she was assessing the Burke Residence.

22.     ASIC initially agreed to defend Dlugosz because the allegation of slander per se was potentially covered as a "personal and advertising injury" offense in the form of "[O]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

23.     ASIC also agreed to defend Dlugosz against Burke's allegation that Dlugosz trespassed on the Burke Residence, under an information technology policy and pursuant to a reservation of ASIC's right to withdraw from Dlugosz' defense in the Underlying Action, because trespass to land was not a negligent act, error or omission committed by Dlugosz during the course of providing Vision's product or Vision's services, among other things.

24.     On September 15, 2020, the Court presiding over the Underlying Action issued an order which granted in part and denied in part Dlugosz' Motion for Summary Judgment directed to the Counterclaim. Although the Motion sought dismissal of the Counterclaim in full, the Court only partially granted the Motion, disposing of the only potentially covered claim, Burke's claim of slander per se. On the same date, the Court in the Underlying Action granted Burke's Request for Leave to Amend his Counterclaim to include two new causes of action for Common Law and Statutory Vexatious Litigation. Accordingly, Burke's Counts for trespass to land and vexatious

litigation are the only causes of action that remain in the Underlying Action. A true and correct copy of the Order on Dlugosz' Motion for Summary Judgment is attached hereto as **Exhibit C**.

### THE POLICIES

25.　　ASIC issued @vantage for Technology Premier policy no. 711-01-35-91-0002 to Vision Appraisal Technology Holdings LLC for the October 30, 2014 to October 30, 2015 policy period (the "2014-2015 CGL Policy"). The 2014-2015 CGL Policy includes commercial general liability coverage (the "2014 CGL Part") and commercial umbrella liability coverage (the "2014 Umbrella Part"). The 2014 CGL Part provides limits of insurance of $1 million each occurrence and $1 million personal and advertising injury aggregate. The 2014 Umbrella Part provides limits of insurance of $10 million each occurrence.  A true and correct copy of the 2014-2015 CGL Policy is attached hereto as **Exhibit D**.

26.　　Dlugosz is an insured under the 2014-2015 CGL Policy but only for "acts within the course and scope of their [Dlugosz'] employment by you [Vision] or while performing duties related to the conduct of your [Vision's] business."

27.　　ASIC issued @vantage for Technology Premier policy no. 711-01-35-91-0003 to Vision Appraisal Technology Holdings LLC for the October 30, 2015 to October 30, 2016 policy period (the "2015-2016 CGL Policy"). The 2015-2016 CGL Policy includes commercial general liability coverage (the "2015 CGL Part") and commercial umbrella liability coverage (the "2015 Umbrella Part"). The 2015 CGL Part provides limits of insurance of $1 million each occurrence and $1 million personal and advertising injury aggregate. The 2015 Umbrella Part provides limits of insurance of $10 million each occurrence.  A true and correct copy of the 2015-2016 CGL Policy is attached hereto as **Exhibit E**.

28.　　Dlugosz is an insured under the 2015-2016 CGL Policy but only for "acts within

the course and scope of their [Dlugosz'] employment by you [Vision] or while performing duties related to the conduct of your [Vision's] business."

29.    The 2014 CGL Part and the 2015 CGL Part may be referred to collectively herein as the "CGL Coverage Parts."  Likewise, the 2014 Umbrella Part and the 2015 Umbrella Part may be referred to collectively herein as the "Umbrella Coverage Parts."

30.    ASIC also issued Information Technology Solutions – Complete policy no. 760-00-96-05-0000 to Vision Appraisal Technology Holdings LLC for the October 30, 2016 to October 30, 2017 policy period (the "ITS Policy").  The ITS Policy includes errors and omissions liability coverage on a claims-made and reported basis.  The ITS Policy provides limits of insurance of $5 million each claim or suit and in the aggregate, subject to a $25,000 retention and an October 30, 2009 retroactive date.  A true and correct copy of the ITS Policy is attached hereto as **Exhibit F**.

31.    Dlugosz is an insured under the ITS Policy but only for "acts within the course and scope of their [Dlugosz'] employment by you [Vision] or while performing duties related to the conduct of your [Vision's] business."

32.    The CGL Coverage Parts afford coverage for "bodily injury" and "property damage" as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * * *

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory",

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

* * * *

33.    The CGL Coverage Parts likewise afford coverage for "personal and advertising injury" as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**    **Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

* * * *

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * * *

34.    As per Endorsement VCG 207 07 09, the CGL Coverage Parts define "bodily injury" as follows:

* * * *

**3.**    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

* * * *

35.    The CGL Coverage Parts define "occurrence" as follows:

* * * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

36.    The CGL Coverage Parts define "property damage" in relevant part as follows:

\* \* \* \*

**17.**    "Property damage" means:

   **a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \* \*

37.    The CGL Coverage Parts define "personal and advertising injury" in relevant part as follows:

\* \* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

   **b.**  Malicious prosecution;

   **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.**  The use of another's advertising idea in your "advertisement"

   **f.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \* \*

38.    The CGL Coverage Parts exclude coverage for "expected or intended injury" as

follows:

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

* * * *

**2.** **Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * * *

39. The CGL Coverage Parts exclude coverage for "personal and advertising injury,"

as follows:

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

* * * *

**2.** **Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

* * * *

40. The CGL Coverage Parts include additional terms and conditions, which define

"Who Is An Insured" under the CGL Coverage Parts, to include Vision employees, but only in

certain circumstances, as follows:

**SECTION II – WHO IS AN INSURED**

* * * *

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the

10

conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

41. The Umbrella Coverage Parts afford coverage for "bodily injury" and "property damage" subject to certain terms and conditions, and which state in relevant part, as follows:

\* \* \* \*

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "Ultimate Net Loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGE A and B.

We will have the right and the duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage", but:

**(1)** The amount we will pay for "Ultimate Net Loss" is limited as described in SECTION III-LIMITS OF INSURANCE;

**(2)** We may, at our discretion, investigate an "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we may have the duty to defend.

**(3)** Our duty to defend applies only to "suits" not covered by any "Underlying Insurance" shown in the Umbrella Declarations or by any other insurance when the limits of the "Underlying Insurance" have been exhausted;

\* \* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \* \*

11

42.     The Umbrella Coverage Parts afford coverage for covered "personal and advertising injury" subject to certain terms and conditions that state in relevant part, as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "Ultimate Net Loss" in excess of the "retained limit" because of "personal and advertising injury to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGE A and B.

We will have the right and the duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury", but:

**(1)** The amount we will pay for "Ultimate Net Loss" is limited as described in SECTION III-LIMITS OF INSURANCE;

**(2)** We may, at our discretion, investigate an offense that may involve this insurance and settle any resultant claim or "suit", for which we may have the duty to defend.

**(3)** Our duty to defend applies only to "suits" not covered by any "Underlying Insurance" shown in the Umbrella Declarations or by any other insurance when the limits of the "Underlying Insurance" have been exhausted;

* * * *

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

43.     The Umbrella Coverage Parts define "bodily injury," "occurrence," and "property damage" as follows:

* * * *

**3.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

* * * *

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

21. "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \* \*

44. The Umbrella Parts define "personal and advertising injury" in relevant part as:

17. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

\* \* \* \*

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that:

        **(1)** slanders or libels a person or organization. This does not include any slander or     libel related to the actual or alleged infringement or violation of any intellectual property rights or laws; or

        **(2)** disparages a person's or organization's goods, products or services. This does not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws;

    **g.** Oral or written publication, in any manner, of material violates a person's right of privacy;

    **h.** The use of another's advertising idea in your "advertisement";

    **i.** Infringing upon another's advertising idea in your advertisement".

45. The Umbrella Coverage Parts define "Ultimate Net Loss" as:

27. "Ultimate Net Loss" means the total amount of damages in excess of the "retained limit" for which the insured is legally liable in payment of "bodily injury," "property damage," and "personal and advertising injury." "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing.

46. The Umbrella Coverage Parts exclude coverage for "expected or intended injury"

as follows:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\* \* \* \*

**2.      Exclusions**

This insurance does not apply to:

**a.   Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

\* \* \* \*

47. The Umbrella Coverage Parts exclude coverage for "personal and advertising injury," in pertinent part as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

\* \* \* \*

**(2) Exclusions**

This insurance does not apply to:

**a.**   "Personal and Advertising Injury":

**(1) Knowing Violation Of Rights of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \* \*

48. The Umbrella Coverage Parts define "Who is an Insured" in relevant part as

follows:

**SECTION II – WHO IS AN INSURED**

* * * *

    b.  Each of the following is also an insured:

        **a.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

* * * *

49.    The ITS Policy affords coverage for "errors and omissions" pursuant to the liability insuring agreement that states as follows:

**SECTION I – COVERAGES**

    **A.  Liability Insuring Agreements**

        **1.  Errors or Omissions Liability Coverage – Your Products and Your Services**
        We will pay those sums that the insured becomes legally obligated to pay as **damages** and **defense expenses** because of an **error or omission** to which this insurance applies if the **error or omission** was committed in the Coverage Territory, on or after the Retroactive Date shown in the Declarations and before the end of the Policy Period shown in the Declarations.

* * * *

50.    The ITS Policy defines "bodily injury" as follows:

**SECTION VII – DEFINITIONS**

* * * *

**C.**    **Bodily injury:**
    **1.**  Means any physical injury, including sickness, disease or pain, sustained by a person.
    **2.**  Includes pain and suffering, shock, and mental or emotional distress, anguish or injury.

* * * *

51.    The ITS Policy defines "error or omission" as follows:

\* \* \* \*

**R.  Error or omission** means any negligent act, error or omission committed by an insured in the course of preparing or providing **your product** or **your services.**

\* \* \* \*

52.     The ITS Policy defines "Who is an Insured" in relevant part as follows:

**SECTION III – WHO IS AN INSURED**

\* \* \* \*

**B.** Each of the following is also an insured:

**1.**     Your **employees,** other than your officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by your or while performing duties related to the conduct of your business.

\* \* \* \*

53.     An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the ASIC Policies and the Underlying Action and to grant such relief as it deems necessary and proper.

## CLAIMS FOR DECLARATORY RELIEF
### COUNT I
**DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE 2014-2015 CGL POLICY, THE 2015-2016 CGL POLICY AND THE ITS POLICY, BECAUSE DLUGOSZ WAS NOT AN INSURED FOR ACTS SHE COMMITTED OUTSIDE OF THE SCOPE OF HER EMPLOYMENT FOR VISION THAT WERE NOT RELATED TO THE CONDUCT OF VISION'S BUSINESS**

54.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs 1 through 53 of this Complaint as if set forth herein, verbatim and fully at length.

55.     ASIC seeks a judicial determination and declaration of its obligations under the 2014-2015 CGL Policy, the 2015-2016 CGL Policy, and the ITS Policy pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, with respect to the following:

56.     Burke asserts counts for vexatious litigation, because on or about July 25, 2016, he claims Dlugosz wrongfully sued him for intentional and negligent emotional distress without probable cause and with malice.

57.     Dlugosz was only an insured under the 2014-2015 Policy, the 2015-2016 Policy and the ITS Policy for acts within the scope of Dlugosz' employment for Vision and while Dlugosz was performing duties related to the conduct of Vision's business.

58.     Likewise, Dlugosz filing suit against Burke for intentional and negligent emotional distress was not within the scope of Dlugosz' employment for Vision, and Dlugosz did not file suit against Burke while performing duties related to the conduct of Vision's business. In fact, Dlugosz was no longer an employee of Vision at the time she filed suit against Burke on July 25, 2016.

59.     ASIC is entitled to a declaration that it has no duty to defend Dlugosz in the Underlying Action, because Dlugosz is not an insured under the 2014-2015 CGL Policy, the 2015-2016 CGL Policy, or the ITS Policy, for intentional and/or malicious conduct committed outside the scope of her employment for Vision and intentional and malicious conduct committed while not performing duties related to the conduct of Vision's business.

**COUNT II**
**DECLARATORY JUDGMENT – ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE CGL COVERAGE PARTS OR THE UMBRELLA COVERAGE PARTS, BECAUSE THE COUNTERCLAIM DOES NOT ALLEGE DAMAGES BECAUSE OF "BODILY INJURY" OR "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE" DURING THE POLICY PERIOD**

60.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length. In the Counterclaim, Burke seeks

monetary damages including compensatory, consequential and punitive damages, statutory damages, interest, attorney's fees, and any equitable relief deemed to be fair and equitable by the Court.

61.     The Counterclaim does not allege that Dlugosz is legally obligated to pay damages because of bodily injury, sickness, or disease, or mental anguish or death resulting from bodily injury, sickness, or disease.  Thus, Burke does not seek damages because of "bodily injury," as defined by the CGL Coverage Parts and the Umbrella Coverage Parts.

62.     The Counterclaim does not allege that Dlugosz is legally obligated to pay damages because of "physical injury to tangible property, including all resulting loss of use of that property," or "loss of use of tangible property that is not physically injured," and thus, Burke does not seek damages because of "property damage," as defined by the CGL Coverage Parts and the Umbrella Coverage Parts.

63.     Burke seeks monetary damages and equitable damages caused by the intentional acts of trespass to land and vexatious litigation.  Burke does not seek covered damages caused by an "[a]ccident, including continuous or repeated exposure to substantially the same general harmful conditions," and thus, does not seek damages because of an "occurrence," as defined by the CGL Coverage Parts and the Umbrella Coverage Parts.

64.     ASIC is entitled to a declaration that it has no duty to defend Dlugosz, because the damages Burke seeks in the Underlying Action are not covered "bodily injury," or "property damage" caused by an "occurrence" as defined by the CGL Coverage Parts and the Umbrella Coverage Parts.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 This Court is

vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

## COUNT III

## DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE CGL COVERAGE PARTS AND THE UMBRELLA COVERAGE PARTS, BECAUSE THEY EXCLUDE COVERAGE "PROPERTY DAMAGE" OR "BODILY INJURY" EXPECTED OR INTENDED BY THE INSURED

65.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length. Burke seeks monetary damages and equitable damages caused by Dlugosz' purported intentional acts of trespass to land and vexatious litigation.

66.     Burke maintains that he confronted Dlugosz as soon as he noticed that Dlugosz was peering in the window and immediately directed Dlugosz to leave the Burke Residence.  In spite of Burke's directive, Dlugosz allegedly continued to trespass on the Burke Residence.

67.     Dlugosz also allegedly maliciously filed suit against Burke without probable cause and subsequently dismissed the suit in Burke's favor.

68.     The CGL Coverage Parts and the Umbrella Coverage Parts exclude coverage for any "bodily injury" or "property damage" expected or intended from the standpoint of the insured. Even if Burke had alleged damages because of "bodily injury" or "property damage," Dlugosz expected or intended that her alleged intentional act of trespass to land and act of malicious and vexatious litigation would damage or injure Burke.

69.     ASIC is entitled to a declaration that ASIC has no duty to defend Dlugosz under the Commercial Coverage Parts and the Umbrella Coverage Parts, because even if the Counterclaim alleged "bodily injury" or "property damage" caused by an "occurrence," the damages that Burke seeks in the Underlying Action were expected or intended from Dlugosz'

standpoint.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

**COUNT IV**

**DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE CGL COVERAGE PARTS AND THE UMBRELLA COVERAGE PARTS, BECAUSE THE COUNTERCLAIM DOES NOT ALLEGE DAMAGES FOR WHICH AN INSURED IS LEGALLY LIABLE BECAUSE OF "PERSONAL AND ADVERTISING INJURY"**

70.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

71.     On September 15, 2020, the Court presiding over the Underlying Action granted Dlugosz' Motion for Summary Judgment as to the slander per se count in the Counterclaim, leaving only Burke's counts for trespass to land and vexatious litigation.

72.     The Counterclaim no longer includes an allegation of damages because of "personal and advertising injury," in the form of "[O]ral or written publication, in any matter, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," as defined in relevant part by the CGL Coverage Parts.  Burke, likewise, no longer seeks damages because of "personal and advertising injury," in the form of "[O]ral or written publication, in any manner, of material that slanders or libels a person or an organization," as defined in relevant part by the Umbrella Coverage Parts.

73.     The Counterclaim's remaining counts of trespass to land and vexatious litigation are not included in the list of enumerated offenses included in the CGL Coverage Parts' and Umbrella Coverage Parts' definitions of "personal and advertising injury."

74.     ASIC is entitled to a declaration that ASIC has no duty to defend Dlugosz, because

the Underlying Action does not seek damages because of "personal and advertising injury," under the CGL Coverage Parts and the Umbrella Coverage Parts. An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2202  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

### COUNT V

**DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ, BECAUSE THE CGL COVERAGE PARTS AND UMBRELLA COVERAGE PARTS EXCLUDE COVERAGE FOR "PERSONAL AND ADVERTISING INJURY" CAUSED BY AN INSURED WITH KNOWLEDGE THE ACT WOULD INFLICT "PERSONAL AND ADVERTISING INJURY"**

75.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length. Burke seeks monetary damages and equitable damages caused by Dlugosz' purported intentional acts of trespass to land and vexatious litigation.

76.     Burke maintains that he confronted Dlugosz as soon as he noticed that Dlugosz was trespassing and peering in the window of the Burke Residence and immediately directed Dlugosz to leave.  In spite of Burke's directive, Dlugosz allegedly continued to trespass on the Burke Residence.

77.     Burke alleges that Dlugosz filed suit against Burke without probable cause and pursued vexatious litigation against Burke with malice.

78.     The CGL Coverage Parts and the Umbrella Coverage Parts exclude coverage for any "personal and advertising injury" caused by the insured with knowledge that the act would inflict "personal and advertising injury" on another.

21

79.     If Dlugosz' alleged trespass to land were "personal and advertising injury" under the CGL Policies, this exclusion would preclude coverage, because Dlugosz knew that she had entered onto the Burke Residence without Burke's permission and refused to leave.

80.     Even if Dlugosz' alleged vexatious litigation were "personal and advertising injury," the exclusion for knowing infliction of "personal and advertising injury" exclusion would preclude coverage.  Burke alleges that Dlugosz pursued the vexatious litigation with malice, which means that she allegedly intended to inflict injury and thus, necessarily knew that she would inflict injury on Burke.

81.     ASIC is entitled to a declaration that ASIC has no duty to defend Dlugosz in the Underlying Action, because if "personal and advertising injury" were alleged, it was inflicted knowingly by Dlugosz. Thus, the knowing infliction of "personal and advertising injury" exclusion in the Commercial Coverage Parts and the Umbrella Coverage Parts would apply.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

## COUNT VI
### DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE ITS POLICY, BECAUSE VEXATIOUS LITIGATION AND TRESPASS TO LAND ARE NOT COVERED "ERRORS AND OMISSIONS"

82.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

83.     Burke seeks monetary damages and equitable damages caused by Dlugosz' purported intentional acts of trespass to land and vexatious litigation.

84.     Burke maintains that he confronted Dlugosz as soon as he noticed that Dlugosz was trespassing and peering in the window of the Burke Residence and that he immediately directed Dlugosz to leave.  In spite of Burke's directive, Dlugosz allegedly continued to trespass on the Burke Residence.

85.     Burke also alleges that Dlugosz pursued the vexatious litigation with malice.

86.     The ITS Policy affords coverage for covered "damages" and defense expenses because of certain "errors and omissions," which the ITS Policy defines as "any negligent act, error or omission committed by an insured in the course of preparing or providing "your [Vision's] product" or "your [Vision's] services."

87.     The intentional act of trespass to land and alleged vexatious litigation are not negligent acts and are not mistakes that constitute an "error or omission" covered by the ITS Policy.

88.     Moreover, Burke does not allege that Dlugosz committed trespass to land and vexatious litigation in the course of preparing or providing Vision's product or services, as required by the ITS Policy's definition of "error or omission."

89.     ASIC is entitled to a declaration that it has no duty to defend Dlugosz under the ITS Policy, because Dlugosz' alleged intentional acts of trespass to land and malicious vexatious litigation are not covered "errors or omissions," as defined by the ITS Policy.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

## COUNT VII

**DECLARATORY JUDGMENT—ASIC HAS NO DUTY TO DEFEND DLUGOSZ PURSUANT TO THE ITS POLICY, BECAUSE VEXATIOUS LITIGATION AND TRESPASS TO LAND INTENTIONAL TORTS ARE EXCLUDED BY THE "INTENTIONAL ACT" EXCLUSION**

90.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

91.     Burke seeks monetary damages and equitable damages caused by Dlugosz' purported intentional acts of trespass to land and vexatious litigation.  Burke alleges that Dlugosz pursued the vexatious litigation with malice.

92.     The ITS Policy includes an Intentional Act exclusion that excludes coverage for "[A]ny intentional, dishonest, fraudulent, malicious or criminal act or omission committed by the insured," which applies in cases of "admission, final adjudication, arbitration, finding of fact, judgment or plea, including a plea of no contest or nolo contend[ere], establishes that such intentional, dishonest, fraudulent, malicious or criminal act or omission was committed by the insured.

93.     Even if Burke had alleged damages because of covered "errors and omissions," the damages would be excluded by the ITS Policy's exclusion for intentional and malicious acts committed by an insured.

94.     ASIC is entitled to a declaration that it has no duty to defend Dlugosz in the Underlying Action, because Dlugosz' wrongful acts were allegedly intentional and malicious.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

**COUNT VIII**

**BECAUSE ASIC HAS NO DUTY TO DEFEND DLUGOSZ UNDER THE 2014-2015 CGL POLICY, THE 2015-2016 CGL POLICY, AND THE ITS POLICY, ASIC HAS NO DUTY TO INDEMNIFY DLUGOSZ UNDER THE 2014-2015 CGL POLICY, THE 2015-2016 CGL POLICY, AND THE ITS POLICY**

95.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

96.     As set forth in Counts I-VII of this Complaint, ASIC has no duty to defend Dlugosz, because the facts alleged in the Counterclaim are not potentially covered under the 2014-2015 CGL Policy, the 2015-2016 CGL Policy, and the ITS Policy.

97.     Moreover, ASIC has no duty to indemnify Dlugosz for the damages or injuries at issue in the Underlying Action, because ASIC has no duty to defend Dlugosz in the Underlying Action.

98.     ASIC is entitled to a declaration that it has no indemnify Dlugosz for the damages or injuries at issue in the Underlying Action, because ASIC has no duty to defend Dlugosz in the Underlying Action. An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

**COUNT IX**

**ASIC IS ENTITLED TO WITHDRAW FROM DEFENDING DLUGOSZ IN THE UNDERLYING ACTION**

99.     ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

100.    Because ASIC is entitled to a declaration that it has no duty to defend Dlugosz in the Underlying Action, ASIC is entitled to a declaration that ASIC is entitled to withdraw from

withdraw from defending Dlugosz in the Underlying Action.  An actual and justiciable controversy currently exists between ASIC and Dlugosz pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Underlying Action and to grant such relief as it deems necessary and proper.

**WHEREFORE,** Plaintiff Atlantic Specialty Insurance Company prays for relief as follows:

1.  For a declaration of the rights, duties and obligations of the parties herein in accordance with the above and as follows:

    a.  A declaration that Plaintiff Atlantic Specialty Insurance Company has no duty to defend Defendant Anna Dlugosz in the Underlying Action;

    b.  A declaration that Plaintiff Atlantic Specialty Insurance Company has no duty to indemnify Defendant Anna Dlugosz for any damages awarded to Defendant Kevin R. Burke in the Underlying Action; and

    c.  A declaration that Plaintiff Atlantic Specialty Insurance Company is entitled to withdraw from defending Defendant Anna Dlugosz in the Underlying Action; and

2.  For such other and further relief as the Court may deem just and proper.

PLAINTIFF,
ATLANTIC SPECIALTY INSURANCE
COMPANY


Dated:  November 23, 2020             By:  /s Regen O'Malley
                                           Regen O'Malley, Esq. (ct 25174)
                                           Gordon Rees Scully Mansukhani, LLP
                                           95 Glastonbury Boulevard, Suite 206
                                           Glastonbury, CT 06033
                                           Telephone: (860) 494-7508
                                           Facsimile: (860) 560-0185
                                           romalley@grsm.com
                                           *Attorneys for Plaintiff*